```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                         ATHENS DIVISION

UNITED STATES OF AMERICA ex      *
rel. ELIZABETH PETERS YOUNG,
                                 *
     Plaintiff,
                                 *
vs.                                       CASE NO. 3:17-CV-94 (CDL)
                                 *
BTW SOLUTIONS, LLC,
                                 *
     Defendant.
                                 *
```

O R D E R

BTW Solutions, LLC is a wholesale distributor of medicines and medical devices, and it offers billing support services to workers' compensation programs. Relator Elizabeth Peters Young sold BTW's products in Georgia for six months in 2015. In 2017, Relator, who is represented by counsel, filed this False Claims Act action against BTW, alleging that BTW submitted false claims for payment to the U.S. Office of Workers' Compensation Programs. Relator alleged that BTW entered distribution agreements with physicians under which the physicians purchased prescription pain creams from BTW at a low cost, dispensed the pain creams to their workers' compensation patients, allowed BTW to bill the Office of Workers' Compensation Programs for the pain creams at a large markup, and then split the marked-up reimbursements with BTW.

For six years after Relator filed this action, the Government investigated Relator's allegations. The Government interviewed

Relator at least twice, gathered documents from her, and kept Relator and her counsel informed of the status of its investigation. The Government sought and obtained consent from Relator and her counsel for each of its thirteen requests for an extension of the time to file its intervention decision. The Government elected to intervene on June 21, 2023 and filed its intervenor complaint on September 21, 2023, alleging that BTW violated the False Claims Act when it engaged in the fraudulent pain cream scheme from August 2013 to December 2018. Before discovery ended, the Government and Relator reached a settlement with BTW. Although BTW denies that it engaged in an unlawful kickback scheme, it agreed to pay the Government $1.5 million to settle this action. Settlement Agreement 2 ¶ 1, ECF No. 84. The only matter that the parties did not agree upon was Relator's attorney's fees and costs.

Presently pending before the Court is Relator's motion for attorney's fees, costs, and expenses (ECF No. 86). As discussed below, the Court grants the motion to the extent that Relator shall recover the following fees and expenses from BTW: attorney's fees in the amount of $263,393.50 and costs in the amount of $286.58, for a total of $263,680.08 in fees and costs.

## DISCUSSION

A relator who brings a qui tam action in which the Government intervenes and obtains proceeds from the defendant "shall . . .

receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." 31 U.S.C. § 3730(d)(1). "All such expenses, fees, and costs shall be awarded against the defendant." *Id.* BTW acknowledges that Relator brought this qui tam action and that the Government intervened and obtained proceeds from it. BTW nonetheless argues that Relator is not entitled to any attorney's fees at all. In the alternative, BTW contends that the fees and expenses Relator seeks are too high. The Court addresses each argument in turn.

I. **Should Relator Recover Attorney's Fees and Expenses from BTW?**

During the Government's investigation of her allegations against BTW, Relator was indicted for conspiracy to pay and receive healthcare kickbacks using a scheme similar to the one she claimed BTW engaged in, but with a different company. In December 2019 (more than two years after she filed this action), Relator was convicted and was sentenced to 57 months in prison. BTW argues that because of her conviction and incarceration, Relator could only have provided "minimal assistance" and "[o]bviously" had no "meaningful input" in this action while she was incarcerated. Def.'s Resp. Br. 4, ECF No. 87. But BTW did not point to any *evidence* that Relator only provided minimal assistance or that she was unavailable due to incarceration, and it is clear from the present record that Relator actively assisted the Government

3

before her incarceration by appearing for at least two interviews and producing documents. Moreover, the Government concluded that Relator *did* meaningfully contribute to its prosecution of the action because it awarded her 18.5 percent of the proceeds—more than the 15 percent minimum award prescribed by the statute. Settlement Agreement 4 ¶ 2; *see* 31 U.S.C. § 3730(d)(1) (stating that if the Government obtains proceeds from a qui tam action, the Relator "shall . . . receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action").

Even if BTW had demonstrated that Relator's contribution was only minimal (which it did not), the statute does not contain the "minimal contribution" exception to the fee rule that BTW now advocates. Instead, the clear statutory language states that if the Government intervenes in a qui tam action and recovers proceeds from the action, then the qui tam relator "shall" receive reasonable expenses, attorney's fees, and costs. 31 U.S.C. § 3730(d)(1).

BTW argues that even if Relator is entitled to a fee award under the statute, the Court should deny her fee request based on equitable factors. In support of this argument, BTW points out that if a qui tam plaintiff "is convicted of criminal misconduct *arising from . . . her role*" in the False Claims Act violation

4

*upon which the qui tam action was brought*, then that person is not entitled to recover proceeds from the qui tam action. *Id.* § 3730(d)(3). But here, as BTW acknowledges, Relator was not convicted of criminal misconduct based on any False Claims Act violation by BTW. Rather, she was convicted of criminal misconduct for unrelated conduct she engaged in while working for another company. By determining that Relator is entitled to 18.5 percent of the proceeds from BTW in this action, the Government has already implicitly concluded that § 3730(d)(3)'s bar does not apply to Relator, and BTW did not point to any authority establishing that Relator's unrelated conviction forecloses a fee award in this action.

BTW's other "equitable factors" argument is that Relator only brought this action "to impede competition from BTW" and that her fee request should be denied because the Court "may choose not to award requested attorneys' fees and expenses under its discretion granted by 31 U.S.C. § 3730(d)(4) where a relator's claims are clearly frivolous, vexatious, or brought primarily for purposes of harassment." Def.'s Resp. Br. 5-6. As a preliminary matter, BTW pointed to zero evidence that Relator brought this action primarily for some improper purpose, and it did not establish that the claims—which it agreed to pay $1.5 million to settle—are clearly frivolous or vexatious. More importantly, § 3730(d)(4) obviously has no application here and thus cannot authorize the Court to

5

deny Relator's fee request under the circumstances of this case. Section 3730(d)(4) provides that if the Government does *not* intervene and if the *defendant prevails* in the action, then the Court may award reasonable attorney's fees *to the defendant* if the relator's claims were "clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." 31 U.S.C. § 3730(d)(4). This code section does not permit a court to deny attorney's fees to a qui tam relator in a case where the Government recovered proceeds from the defendant and awarded a percentage of those proceeds to the qui tam relator.

In summary, none of BTW's arguments persuade the Court that it should deny Relator's motion for fees, expenses, and costs. The next question is whether the Court should award Relator the full amount of fees, expenses, and costs she seeks.

**II. What Amount Should Relator Recover from BTW?**

A. Attorney's Fees

Relator seeks $251,741.00 in attorney's fees for work performed by the law firm Krevolin & Horst LLC. She also seeks $11,652.50 in attorney's fees for work performed by the law firm Jeyaram & Associates, P.C.[1] Both Relator and BTW assert that the Court should use the "lodestar method" to determine the correct

---

[1] In her brief, Relator seeks $11,660.50 in attorney's fees for work performed by the firm of Jeyaram & Associates, P.C. The affidavit and billing records supporting the fee motion state that Deepak Jeyaram performed 29.5 hours of work at a billing rate of $395 per hour, for a total of $11,652.50. Jeyaram Aff. Ex. 1, Invoice 23283, ECF No. 86-2.

6

amount of attorney's fees. Under that method, the Court multiplies "the hours reasonably spent on a case . . . by a reasonable hourly rate;" the resulting product is the lodestar, "which is strongly presumed to represent an appropriate attorney's fee." *Johnston v. Borders*, 36 F.4th 1254, 1278 n.40 (11th Cir. 2022) (per curiam). Here, Relator's attorneys spent more than 400 hours on this action, dating back to 2016. They seek to recover for 396.3 hours: 366.8 hours by the firm Krevolin & Horst LLC and 29.5 hours by the firm Jeyaram & Associates, P.C. BTW argues that the Court should exclude some of this time to account for unsuccessful claims.

Relator cannot recover for "time spent on discrete and unsuccessful claims." *Id.* at 1286 (quoting *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988)). Unsuccessful claims are "discrete" if they "are based on different facts and legal theories" than the successful claims, and time spent on such discrete claims is not recoverable. *Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983). But time spent on unsuccessful claims is recoverable "if the time spent is related to a fee-shifting claim based on a 'common core of fact or . . . related legal theories.'" *Borders*, 36 F.4th at 1282-83 (quoting *Hensley*, 461 U.S. at 435). So, the Court must determine whether the unsuccessful claims that the Government elected not to pursue are related to the successful claims that resulted in the $1.5 million settlement.

7

"Whether two claims are related turns on the evidence needed to prove them." *Id.* at 1283. In evaluating the interrelatedness of claims, the courts generally consider "the elements of the claims, the evidence that would be relevant at trial, and whether separate trials would be proper." *Id.* at 1284. So, time spent developing facts related solely to an unsuccessful claim must be excluded, but preparation that is material to both successful and unsuccessful claims—such as development of evidence relevant to both claims and "discussions with the plaintiff [and] preparations for the plaintiff's testimony"—is recoverable. *Id.*

Relator's original complaint asserted False Claims Act claims against BTW. There is no dispute that those claims were successful because the Government intervened and recovered proceeds from BTW based on those claims. The Government did not intervene on Relator's remaining claims against numerous physicians, which were premised on alleged violations of the federal Anti-Kickback Statute and the Stark Law (which restricts physician self-referrals). Those claims were unsuccessful because the Government did not pursue them in this action. But all the claims are based on the exact same set of facts: BTW had distribution agreements with healthcare providers under which it sold prescription pain creams and patches to the providers at a low cost, billed the Government a marked-up amount on behalf of those providers, then split the marked-up reimbursement with the providers. While the

8

Government chose not to pursue claims against the healthcare providers in this action, its allegations in the intervenor complaint and the covered conduct released by the settlement agreement necessarily reference those healthcare providers, who allegedly prescribed products sold by BTW in exchange for a cut of the marked-up reimbursement from the Government.

Moreover, the bulk of counsel's pre-intervention time was spent not on discovery or developing evidence related to specific claims but on investigating and drafting the complaint, representing Relator during her interview with the Government, assisting Relator with her document production to the Government, and communicating with the Government on its requests to extend the intervention deadline. Such work applies to all the claims, not just the Anti-Kickback Statute claims against BTW. Accordingly, work on the "unsuccessful" claims cannot be separated from work on the successful claims, and the Court finds that no deduction should be made on this ground. For the same reason, the Court finds that there should be no reduction to the lodestar based on the Government's "modest" ultimate recovery of $1.5 million.

BTW contends that even if the Court does not deduct time to account for unsuccessful claims, it should exclude time based on "redundant tasks" and "block billing." Def.'s Resp. Br. 8. Redundant tasks are not recoverable because they are unnecessary to the case; a lawyer exercising good billing judgment should

9

exclude such hours from her bill. And block billing multiple unrelated tasks in a single billing entry is problematic where the entry contains both recoverable time and non-recoverable time because it is difficult to calculate how much time an attorney devoted to the recoverable tasks. BTW pointed to a single example of alleged block billing and redundant tasks: when the Court entered an order in November 2019, one lawyer spent 1.6 hours reading it, sharing it with the client, and conferring with co-counsel and the client about it, and co-counsel spent 0.3 hours reviewing the order and emailing the client about it. The Court is not convinced that these entries are impermissibly redundant or that the entries improperly combine recoverable and non-recoverable time. The Court reviewed the remainder of the billing records and found no instances of unnecessary time. Accordingly, Relator may recover for 396.3 hours as requested.

The next step in calculating the lodestar is to determine the reasonable hourly rate for each timekeeper. Relator "bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Norman v. Hous. Auth.*, 836 F.2d 1292, 1299 (1988). Here, "the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is" Athens, Georgia because that is where the case was filed. *ACLU of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999). Relator's lawyers are from Atlanta, not Athens, and

10

Relator seeks to recover at Atlanta rates. "If a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims." *Id.* Relator pointed to evidence that there are no lawyers in Athens who specialize in False Claims Act litigation and have expertise similar to that of Relator's counsel. Karinshak Aff. ¶¶ 30-31, ECF No. 86-1. The Court finds that Relator may recover at the Atlanta rates.

To determine a reasonable hourly rate for each lawyer, the courts generally look to what a lawyer charges her paying clients because that "is powerful, and perhaps the best, evidence of [her] market rate; that is most likely to be what [she] is paid as 'determined by supply and demand.'" *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354-55 (11th Cir. 2000) (per curiam) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). Relator's legal team included the following individuals: Zahra Karinshak, a lawyer with approximately twenty-eight years of experience; Adam Sparks, a lawyer with approximately sixteen years of experience; Barclay Vallotton, a lawyer with approximately twelve years of experience; Dovie Madlock, a paralegal with approximately sixteen years of experience; and Deepak Jeyaram, a lawyer with approximately twenty-eight years of experience. BTW does not challenge the hourly rates sought by Relator's counsel.

11

The Court begins with the two lowest billing rates. Jeyaram billed $395 per hour in this matter, which is also his "actual billing rate (charged and received)" for paying clients in complex civil litigation. Jeyaram Aff. ¶ 16, ECF No. 86-2. The Court has approved similar hourly rates for lawyers of comparable skills, experience, and reputation in complex civil matters, so the Court finds that this hourly rate is reasonable. *Jordan Outdoor Enters., Ltd. v. J&M Concepts, LLC*, No. 4:18-CV-126 (CDL), 2021 WL 682068, at *9 (M.D. Ga. Feb. 22, 2021). The hourly rate for Paralegal Madlock was $150 in 2019, increased to $175 in 2023, and increased to $185 in 2025. The Court has approved similar hourly rates for paralegals in complex civil matters, so the Court finds that these hourly rates are reasonable. *Id.*

For the remaining timekeepers, Relator represents in her brief that she seeks to recover at rates that "are the same that Relator's counsels' firms charge to and are paid by their hourly fee-paying clients." Pl.'s Mot. for Fees 8, ECF No. 86. Although not clearly explained in the motion, it appears that counsel charges a premium in False Claims Act cases compared to other civil matters, which may be attributable to the increased complexity of the work and/or the contingency nature of their fee agreement in False Claims Act cases which includes a risk of nonrecovery of fees. The rates sought are as follows:

- ♦ Karinshak's hourly rate for False Claims Act cases was $500 in 2016, increased each year, and is now $780. Karinshak

      Aff. ¶ 26. Her "current actual billing rate (charged and received)" is $675 for non-False Claims Act civil matters. *Id.* ¶ 29.

- Sparks's hourly rate for False Claims Act cases was $375 in 2016, increased each year, and is now $655. *Id.* ¶ 27. His "current actual billing rate (charged and received)" is $575 for non-False Claims Act civil matters. *Id.* ¶ 29.

- Vallotton's hourly rate for False Claims Act cases was $575 in 2024 and increased to $605 in 2025. *Id.* ¶ 28. Her "current actual billing rate (charged and received)" is $525 for non-False Claims Act civil matters. *Id.* ¶ 29.

Importantly, BTW does not object to the "False Claims Act" rates, and Relator pointed to authority where similar or even higher rates have been approved by other courts. Under these circumstances, the Court finds that the rates sought are within the reasonable range for Atlanta-based lawyers in this type of False Claims Act case.[2] The Court thus finds that the following amount represents the reasonable attorney's fees for Relator's counsel in this action:

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Z. Karinshak | 275.7 | $500 to $780 | $183,339.00 |
| A. Sparks | 53.7 | $375 to $655 | $25,229.00 |
| B. Vallotton | 29.8 | $575 to $605 | $40,971.00 |
| D. Madlock | 7.6 | $150 to $185 | $2,202.00 |
| | | Total – Krevolin & Horst | $251,741.00 |
| D. Jeyaram | 29.5 | $395 | $11,652.50 |
| | | Total – Jeyaram & Associates | $11,652.50 |
| | | Grand Total | $263,393.50 |

---

[2] Today's ruling does not establish a precedent for hourly rates in future cases where the rate is contested with credible evidence.

B.  Costs and Expenses

Turning to costs and expenses of litigation, Relator initially sought $436.58 in costs and litigation expenses, but $150 was incorrectly charged to Relator's matter, and Relator does not seek that amount. Karinshak Suppl. Aff. ¶ 20 n.2, ECF No. 88-1. So, the correct amount of costs and expenses is $286.58. BTW does not assert a persuasive challenge to the amount of costs and expenses, and the Court finds the amount to be reasonable.

In her reply brief, Relator seeks an additional $8,160.00 in "expenses." The additional expenses were incurred when Relator's counsel hired attorney Lee Tarte Wallace "as a consultant and potential expert" on the fee motion. *Id.* ¶ 12. According to the billing records, Wallace had meetings with Relator's counsel, reviewed case documents, and conducted legal research. Karinshak Suppl. Aff. Ex. 2, Wallace Invoice, ECF No. 88-3. Wallace billed Relator's counsel for 9.6 hours at a rate of $850.00, for a total of $8,160.00. Relator does not argue that this amount is a recoverable attorney's fee based on hours Wallace expended on the litigation multiplied by a reasonable hourly rate. Instead, Relator contends that it is a reasonable litigation expense, presumably because Wallace was a potential expert.

Where an expert testifies in court or by deposition on behalf of a party, the expert witness fee is taxable as a cost but limited to the statutory per diem amount of $40. *See* 28 U.S.C. § 1920(3);

14

*Id.* § 1821(b).  Here, Wallace did not testify or submit an affidavit or expert report to the Court, and it is unclear to the Court based on the present record how Wallace's expenses were reasonably or necessarily incurred for this action.  The present record also does not establish that Wallace's expenses are not duplicative of the attorney's fees incurred by Relator's primary counsel.  Relator did not point to any authority establishing a right to recover such expenses under these circumstances, so the Court declines to award Relator the $8,160.00 for Wallace's expenses.  In summary, Relator only established that she is entitled to costs and expenses of $286.58.

Finally, Relator seeks interest on her fee award, asserting that interest began accruing on the effective settlement date.  Relator did not explain the basis for awarding interest or point to authority requiring that pre-judgment, pre-fee award interest be granted under the circumstances of this case.  The Court thus declines to add pre-judgment interest.

## CONCLUSION

For the reasons set forth above, the Court orders BTW to pay Relator attorney's fees of $263,393.50 and costs in the amount of $286.58, for a total of $263,680.08.

IT IS SO ORDERED, this 10th day of July, 2025.

S/Clay D. Land  
CLAY D. LAND  
U.S. DISTRICT COURT JUDGE  
MIDDLE DISTRICT OF GEORGIA